IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Maurice Harrell, | ) | C/A No. 3:20-cv-00218-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| BMW of North America, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is like many others currently pending before various courts in that it involves fraud and warranty-based claims related to an allegedly defective N63 engine. After opting out of a nationwide class action,[1] Plaintiff Maurice Harrell ("Plaintiff") brought this action asserting five claims against Defendant BMW of North America, LLC ("Defendant"): (1) Breach of Warranty pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.; (2) Breach of Implied Warranty of Merchantability pursuant to the Magnuson-Moss Warranty Act and S.C. Code Ann. § 36-2-314; (3) Breach of Express Warranty, S.C. Code Ann. § 36-2-313; (4) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, *et seq*.; and (5) fraudulent concealment. [*See* ECF No. 11.]

Currently before the court is Defendant's Motion to Dismiss the Amended Complaint. [ECF No. 13.] The issues are fully briefed and ripe for resolution by this court. [ECF Nos. 16, 17, 23.] For the reasons outlined herein, the court denies the motion.

---

[1] *Bang v. BMW of N. Am., LLC*, No. 15-cv-1695 (D.N.J.).

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 8, 2009, Plaintiff purchased a 2009 BMW 750Li from a BMW authorized dealer in South Carolina. [ECF No. 11, Am. Compl. at ¶ 15.] "Within a few months," Plaintiff discovered that the vehicle "consumed an excessive amount of engine oil which required him to add one quart of oil about every 2,500 miles throughout the warranty period and well before the Defendant's recommended oil change intervals." *Id.* at ¶ 17. He lodged complaints with the local dealership, BMW of Columbia, "on more than one occasion." *Id.* at ¶ 18. In response, the dealership informed him that the consumption was "normal" and did not offer any repairs. *Id.* at ¶ 19. Plaintiff claims he has spent "approximately $3,600.00 in out-of-pocket costs associated with the [] excessive oil consumption." *Id.* at ¶ 22.

Plaintiff contends that the excessive consumption of oil is due to a manufacturing defect in the N63 engine. *Id.* at ¶ 32. According to Plaintiff, the N63 engine is "widely known and described as defective throughout the automotive industry and the BMW-enthusiast community" and "notorious for consuming excessive amounts of engine oil." *Id.* at ¶¶ 37, 38. He notes that the "oil consumption defect" was "apparent" in a 2015 Consumer Reports study and the excessive oil consumption was the subject of a 2011 complaint thread on a BMW enthusiast website. *Id.* at ¶¶ 39–41, 43–44.

Because the "oil consumption defect" became "so problematic," Plaintiff claims Defendant issued a series of technical service bulletins ("TSBs") to "address [the] complaints." *Id.* at ¶ 47. In the June 2013 TSB, Defendant changed the oil consumption specifications for N63 vehicles, instructing service technicians to add two quarts of engine oil rather than one during oil change

---

[2] The facts are taken from Plaintiff's Amended Complaint. In deciding the present motion, the court accepts the well-pleaded factual allegations as true.

services. *Id.* at ¶¶ 49, 50. Plaintiff claims that the June 2013 TSB is "part of a campaign to conceal the oil consumption defect" because it represents the oil consumption as a "normal feature of BMW vehicles." *Id.* at ¶ 51.

Thereafter, in December 2014, Defendant launched its "Customer Care Package" which, among other things, instructed service technicians to check various component parts of the N63 engine and reduced the recommended oil change interval from earlier of 15,000 miles/two years to the earlier of 10,000 miles/one year. *Id.* at ¶¶ 56–58. At the same time, Defendant also launched its "N63 Customer Loyalty Offer," giving purchasers discounts on the purchase of a new vehicle to replace the N63 vehicle. *Id.* at ¶ 59.

On September 18, 2015, a class action lawsuit was filed in the United States District Court for the District of New Jersey, making similar allegations regarding the N63 engine. *See Bang*, No. 15-cv-6945; *see also* Am. Compl. at ¶¶ 87–90. It settled, and Plaintiff opted out of the settlement. Am. Compl. at ¶ 87. After opting out of the settlement, Plaintiff filed an action in New Jersey on December 3, 2018. *Id.* On November 27, 2019, the New Jersey District Court severed and dismissed without prejudice Plaintiff's claims. *Id.* at ¶ 89; *see also Sarwar et al. v. BMW of N. Am., LLC*, No. 18-cv-16750, 2019 WL 7499157 (D.N.J. Nov. 27, 2019). Plaintiff filed this action on January 22, 2020. [ECF No. 1.] Following an amended pleading, Defendant moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [ECF No. 13.] Plaintiff responded in opposition, and Defendant replied. [ECF Nos. 16, 17.]

## DISCUSSION

Defendant first argues that all of Plaintiff's claims should be dismissed because they are barred by the statute of limitations and tolling does not apply. [ECF No. 13-1 at pp.5–12.] And as to the SCUTPA and fraudulent concealment claims, Defendant argues that in addition to being untimely,

3

Plaintiff has not pleaded the claims with the requisite particularity and the claims are barred by the economic loss rule. *Id.* at pp.12–15. Each argument is addressed in turn.

## I. Statute of Limitations.

Defendant relies on the statute of limitations affirmative defense in seeking dismissal of all of Plaintiff's claims. "[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). As a result, district courts may only resolve a statute of limitations defense at the motion to dismiss stage if "all facts necessary to the affirmative defense '*clearly appear*[] on the face of the complaint.'" *Id.* (quoting *Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis added). Here, Plaintiff's arguments suggest that absent tolling, his claims may be untimely.[3] Thus, this court's analysis will address the applicable statutes and the relevant dates addressed by the parties before focusing on whether Plaintiff has sufficiently pleaded a tolling doctrine to survive dismissal.

---

[3] The court notes that the burden of establishing an affirmative defense, such as the statute of limitations, rests with the Defendant. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Interestingly, however, Plaintiff's arguments in opposition focus exclusively on tolling doctrines. He argues that "BMW has failed to point to allegations on the face of the complaint that show Plaintiff's claims are untimely under these *tolled periods*." [ECF No. 16 at p.6 (emphasis added); *see also id.* ("In light of BMW's misrepresentations . . . , Plaintiff could not have discovered that his car was defective when he first observed the oil consumption or first complained to a BMW dealer.").] Additionally, in discussing the *Bang* class action, Plaintiff's opposition references a "one month and three year gap" between the running of the statutes of limitations on the breach of warranties claims and SCUTPA and fraudulent concealment claims, respectively, and the filing of the *Bang* class action on September 18, 2015. *Id.* at p.9. Plaintiff, again acknowledging these "gaps," argues tolling: "[S]uch one month and three[-]year gap, respectively, has been bridged by the running of fraudulent concealment and equitable tolling doctrines, therefore allowing Plaintiff to seek refuge under class action tolling as well." *Id.*

Plaintiff's state-law fraudulent concealment cause of action and his SCUTPA claim are subject to three-year statutes of limitations. *See* S.C. Code Ann. §§ 15-3-530; 39-5-150 ("No action may be brought under this article more than three years after discovery of the unlawful conduct which is the subject of the suit."); *see also Brooks v. GAF Materials Corp.*, 284 F.R.D. 352, 357 (D.S.C. 2012) ("South Carolina law provides for a three-year statute of limitations on actions for negligence, negligent misrepresentation, fraud, and unfair trade practices."). In both instances, the discovery rule determines the date of accrual of the claims. *See Benton v. Roger C. Peace Hosp.*, 443 S.E.2d 537, 524 (S.C. 1994). "The statute of limitations begins to run when a cause of action reasonably ought to have been discovered," *i.e.*, "when the facts and circumstances of the injury would put a person of common knowledge on notice that some right has been invaded or the claim against another party exists." *Id.*

Plaintiff's South Carolina-based warranty claims are subject to a six-year statute of limitations, and the discovery rule similarly applies. S.C. Code Ann. § 36-2-725 ("A cause of action accrues for breach of warranty when the breach is or should have been discovered."). The Magnuson-Moss Warranty Act, which "provides a method for consumers to sue for violations of a written or implied warranty," does not contain a statute of limitations, however. *Weinreich v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:18-cv-3294, 2019 WL 5684376, at *4 (D.S.C. Oct. 31, 2019). When faced with a federal statute without a specified limitations period, the court looks to the limitations period of an analogous state law. *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33–34 (1995) (noting how "often federal statutes fail to provide any limitations period for the causes of action they create, leaving courts to borrow a period, generally from state law, to limit these claims"); *see also Carlson v. General Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) ("[T]he Act 'operates *in conjunction with state law* to regulate the warranting of consumer products.'"). As noted above,

5

the analogous state law provides a six-year limitations period for warranty claims. This court will therefore apply a six-year limitations period to the Magnuson-Moss Warranty Act claims. *See Carlson*, 883 F.2d at 292 (noting South Carolina's adoption of Article 2 of the Uniform Commercial Code and applying "relevant provisions thereof to the full extent required for resolution of the substantive questions").

Relying on a recent case out of this District, Defendant contends, however, that the statute of limitations on the warranty claims is further limited by the durational limit—four years—that appears in the express warranty. *See Weinreich v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:18-cv-3294, 2019 WL 5684376, at *3 (D.S.C. Oct. 31, 2019); [ECF No. 13-1 at p.6]. Specifically, Defendant argues that "[t]he express terms of the New Vehicle Limited Warranty, namely the four-year expiration period, will not be extended by the limitations period outlined in S.C. Code Ann. § 36-2-725." [ECF No. 13-1 at p.6.] While the court generally agrees that the statute of limitations does not in and of itself extend an express warranty, Defendant's argument seems to incorrectly conflate a duration limitation of a warranty with the statutory period within which legal proceedings may be timely initiated.[4]

The *Weinreich* court addressed the durational limitation of a warranty separate from the statute of limitations. With respect to the statute of limitations, the *Weinreich* court found that the plaintiff's warranty claims were subject to the six-year statute of limitations in S.C. Code Ann. § 36-2-725, the discovery rule applied, and when viewing the facts in a light most favorable to the

---

[4] The court agrees with Defendant that it may exclude or modify warranties in accordance with S.C. Code Ann. §§ 36-2-314 and 36-2-316. But, as the *Weinreich* court noted, a party may argue that the resulting limitations and disclaimers are unreasonable or unconscionable. *Weinreich v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:18-cv-3294, 2019 WL 5684376, at *4 (D.S.C. Oct. 31, 2019) ("South Carolina law specifically permits a Court to find a contract clause unenforceable if it is unconscionable.").

plaintiff, he did not discover his claims until 2017. Thus, because the complaint did not suggest that the plaintiff had knowledge of his claims before 2017, the court found the 2019 filing was timely, and it denied the motion to dismiss.

As to the durational limitation issue, the question before the *Weinreich* court was whether the plaintiff adequately alleged a claim for breach of warranties when the car was purchased in 2005, the warranty limited its duration to three years/36,000 miles, and the alleged defect or issue giving rise to the lawsuit did not occur until 2018—10 years after the expiration of the warranty. In that regard, the *Weinreich* court noted that the defendant was correct to argue that the three-year/36,000 warranty "long-*expired* by 2018."[5] *Id.* at *4 (emphasis added). However, the *expiration* of the durational limitation related solely to the defendant's argument that the plaintiff failed to state a claim, not to the running of the statute of limitations. In that case, the plaintiff argued that the durational limitation in the warranty "was 'unconscionable' and 'unenforceable'" because the defendant "knew, at the time of the sale, that the defect existed and would not *manifest until after* the warranty expired." *Id.* (emphasis added). Ultimately, the *Weinreich* court was unable to "determine at the motion to dismiss stage that the durational limits on the express and implied warranties were not reasonable or unconscionable," and it allowed the warranty claims to survive dismissal for failure to state a claim. *Id.*

Again, the expiration/enforceability of the durational limitation is an analysis distinct from that of the running of the statute of limitations. The former asks whether the complained of conduct occurred during the duration of the warranty and, if it did not, whether the durational limitation is

---

[5] In *Weinreich*, like here, the implied warranties were limited to the same duration as the express warranty. 2019 WL 5684376, at *4 n.4; [ECF No. 13-1 at p.7 (The express warranty "overtly limits the duration of any implied warranties, including the implied warranty of merchantability, to the duration of the express warranties contained therein (4 years, 50,000 miles).").]

7

enforceable. The latter asks whether the claim was asserted in an appropriate amount of time following discovery of the offending conduct. At best, *Weinreich* suggests—logically so—that for a plaintiff to state a warranty claim, the defect or issue allegedly covered by the warranty must arise prior to the expiration of the warranty period.[6] Because Plaintiff alleges that the vehicle was consuming excessive amounts of oil during the warranty period[7] and unconscionability of the durational limitation is not alleged, the court finds *Weinreich* inapplicable to the statute of limitations issue in the present motion. As a result, the durational limitation of the warranty does not impact the duration of the applicable statute of limitations, which, in this case, is six years.

Now, the court will turn to the dates at issue. Defendant contends that all applicable statutes of limitations "began to run on the date Plaintiff first observed that his car allegedly consume[d] an excessive amount of oil[.]" [ECF No. 17 at p.2.] Defendant relies on Plaintiff's affirmative allegation in the complaint that he purchased the vehicle on August 8, 2009 and, "[w]ithin a few months," he "observed that it consumed an excessive amount of engine oil which required him to add one quart of oil . . . well before the Defendant's recommended oil change intervals." Am. Compl. at ¶¶ 15, 17. According to Defendant, these allegations are sufficient to show that Plaintiff

---

[6] The Fourth Circuit Court of Appeals addressed a similar issue in *Carlson v. General Motors Corporation*, 883 F.2d 287 (4th Cir. 1989). There, the Fourth Circuit reversed the district court's dismissal of the warranty claims of certain plaintiffs who alleged that "they first encountered substantial difficulties with their diesel-equipped GM cars *only after* the purported *expiration of* all express and implied warranties." *Id.* at 296 (emphasis added). The plaintiffs argued that even if the durational limitation in the express warranty was reasonable, "[defendant's] knowledge of certain 'inherent defects' in the diesel engines rendered all parallel limitations on *implied* warranties 'unconscionable.'" *Id.* at 295. The Fourth Circuit reasoned that as to "the 'reasonableness' of the warranty disclaimers, [defendant's] alleged knowledge of various 'inherent defects' in its products simply has no relevance," but in "[d]etermining whether the imposition of warranty limitations was 'unconscionable,'" the fact that the defendant "knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constitutes 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.'" *Id.* at 296.

[7] A fact on which Defendant relies in arguing that the statute of limitations ran many years ago.

8

was "on notice" of a claim in 2009 and, as a result, Plaintiff was required to bring his claims "at least by the end of 2013."[8] [ECF No. 13-1 at p.8; *see also* ECF No. 17 at pp.3–4.] Plaintiff did not file the above-captioned action until January 22, 2020—seven years too late. [ECF No. 1.]

At first glance, Defendant's arguments are persuasive. The relevant dates appear on the face of Plaintiff's complaint and suggest he was on notice of a potential claim as early as 2009. Further, Plaintiff alleges that publicly available sources indicated that the N63 engine's oil consumption was "notorious" and a "hot topic" in 2011. Am. Compl. at ¶¶ 38, 44. South Carolina's discovery rule requires a plaintiff to "act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party *might* exist." *Dean v. Ruscon Corp.*, 468 S.E.2d 645, 647 (S.C. 1996) (emphasis added). The statute of limitations will begin to run when a potential claim "reasonably ought to have been discovered." *Id.*; *see also Wiggins v. Edwards*, 442 S.E.2d 169, 170 (S.C. 1994) (noting the statute of limitations does not wait so long as "when advice of counsel is sought or a full-blown theory of recovery developed" (citation omitted)); [ECF No. 16 at p.5 (admitting that the excessive consumption of oil is "a *symptom* of the underlying defect with the N63 engine").] In the absence of an applicable tolling doctrine, this court's analysis of the statute of limitations may very well have concluded at this juncture. To save his claims from dismissal, Plaintiff relies on several tolling doctrines: (1) fraudulent concealment tolling; (2) discovery rule tolling; (3) estoppel; and (4) class action tolling.

---

[8] A three-year statute of limitations running from the end of 2009 would lapse in 2012, and a six-year statute of limitations running from the same period would lapse in 2015. The court presumes that the 2013 date stems from Defendant's argument regarding the durational limitation of the warranty—an argument which the undersigned previously rejected.

Three of the four tolling doctrines[9] stem from the same premise: Defendant actively concealed the fact that the N63 engine's oil consumption was a defect injurious to Plaintiff. *See* Am. Compl. at ¶¶ 75–76 (fraudulent concealment, noting TSBs and failure to disclose defect to Plaintiff), 82–83 (discovery rule, noting he could not know that subsequent campaigns did not cure defect), 85 (estoppel, stating generally that Defendant concealed the true nature of the vehicle). The question for the court is whether pleading these doctrines along with corresponding facts saves Plaintiff's complaint from dismissal at this early stage of the litigation. Like many other district courts addressing similar claims involving the N63 engine, the undersigned finds that it does.[10]

The fraudulent concealment doctrine[11] "applies in situations 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019) (citing *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). "Under this doctrine, because of the defendant's

---

[9] As noted above, given Plaintiff's concessions regarding the "gap" that must be "bridged by [the] fraudulent concealment and equitable tolling doctrines," ECF No. 16 at p.9, this court will not reach class action tolling unless it finds that the allegations related to fraudulent concealment and equitable estoppel are sufficient. In any event, the court generally agrees with Plaintiff that the commencement of a class action suspends the applicable statute of limitations for all members of the putative class. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–55 (1983); *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553–54 (1974).

[10] *Nyarko v. BMW of N. Am., LLC*, No. 18-cv-3618, 2020 WL 1491361 (D. Md. Mar. 27, 2020); *Loy v. BMW of N. Am., LLC*, No. 4:19-cv-184, 2020 WL 5095372 (E.D. Mo. Aug. 28, 2020); *Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617 (N.D. Ohio 2020); *O'Connor v. BMW of N. Am., LLC*, No. 18-cv-3190, 2020 WL 2309617 (D. Colo. Jan. 7, 2020), *report and recommendation adopted by* 2020 WL 1303285 (D. Colo. Mar. 19, 2020); *Carroll v. BMW of N. Am., LLC*, No. 1:19-cv-224, 2019 WL 4243153 (S.D. Ind. Sept. 6, 2019).

[11] The parties seem to mostly rely on the Fourth Circuit's standard for fraudulent concealment tolling and, therefore, the court will do the same here. [*See* ECF No.13-1 at pp.9–10, ECF No.16 at p.6. *But see* ECF No.17 at n.6 (referencing South Carolina law on equitable estoppel and fraudulent concealment).] Without deciding the issue on the present motion, the court notes that South Carolina tolling standards may be more appropriate going forward. *See Wallace v. Kato*, 549 U.S. 384, 395 (2007) ("We have generally referred to state law for tolling rules, just as we have for the length of the statutes of limitations.").

10

wrongful acts of concealment, the plaintiff is not aware of the facts giving rise to his claim within the limitations period." *Id.*

Equitable estoppel is similar. If proven, it "operates to deny a party 'the right to plead or prove an otherwise important fact.'" *Maher v. Tietex Corp.*, 500 S.E.2d 204, 209 (S.C. Ct. App. 1998) (citing *Parker v. Parker*, 443 S.E.2d 388, 391 (S.C. 1994)). The party asserting estoppel must show "(1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts." *Id.* (citing *Brayboy v. Ewing*, 428 S.E.2d 731, 732 (S.C. Ct. App. 1993)). That party must also show that he "(1) lack[ed] [] knowledge and [] the means of knowledge of the truth as to the facts in question; and (2) reliance upon the conduct of the party estopped." *Id.* (citing *Brayboy*, 428 S.E.3d at 732).

And finally, Plaintiff relies on the discovery rule—a doctrine that is briefly discussed in the court's analysis above. "According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered." *Bayle v. South Carolina Dep't of Transp.*, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001). The question is objective, rather than subjective. *Joubert v. South Carolina Dep't of Soc. Servs.*, 534 S.E.2d 1 (Ct. App. 2000). "In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist." *Young v. South Carolina Dep't of Corrs.*, 511 S.E.2d 413, 416 (S.C. Ct. App. 1999).

Taking into consideration the above-referenced law, the court finds that the Amended Complaint does not contain sufficient information for it to conclude that Plaintiff's claims are

barred by the statutes of limitations. While there is a significant "gap" between the time Plaintiff purchased his vehicle and the time he brought the above-captioned lawsuit, Plaintiff does allege facts in support of the various tolling doctrines in an attempt to bridge that "gap."[12] In the Amended Complaint, Plaintiff points to the various TSBs issued by Defendant related to complaints of excessive oil consumption, the subsequent Customer Care Package and Customer Loyalty Offer, and the statements by employees of the dealership that the consumption was normal to support his reliance on the tolling doctrines. The court finds these allegations sufficient at this early stage of the litigation.

To rule in Defendant's favor at the motion to dismiss stage, this court would have to conclude that none of the tolling doctrines apply as a matter of law. The court simply cannot reach such a conclusion based on the limited information currently before it. Further factual development is necessary. *See Edmonson*, 922 F.3d at 554–56 (concluding that public information did not preclude plaintiff from meeting burden at pleading stage to assert fraudulent concealment); *Sprague v. Champion Window & Patio Room Co.*, No. 8:14-cv-3273, 2014 WL 12613269, at *2 (D.S.C. Sept. 29, 2014) ("The face of the complaint does not contain all facts necessary to determine the statute of limitations issue. Therefore, at this stage of the case, the motion to dismiss based on the statute of limitations is denied."). This, of course, is not the end of the road for Defendant. After discovery provides an opportunity for further factual development of these issues, and if the statute of limitations is raised again, the court will revisit it analysis. But for now, Defendant's motion to dismiss all claims due to the running of the statutes of limitations is denied.

---

[12] To close the loop on footnote 9, *supra*, the court notes briefly that it finds Plaintiff's claims sufficiently similar to those asserted in the *Bang* class action to invoke class action tolling.

**II. Requisite Particularity in Pleading.**

In addition to the running of the statutes of limitations, Defendant argues that Plaintiff fails to adequately plead his claims for alleged violation of the SCUTPA and fraudulent concealment as required by Rule 9(b).[13] Defendant also contends that because Plaintiff is alleging fraud based on omission, Plaintiff must plead a relationship sufficient to give rise to a duty to disclose under South Carolina law and he fails to do so. [ECF No. 13-1 at pp.12–15.]

Rule 9(b), FRCP outlines a heightened pleading standard for fraud or mistake, and it applies with equal force to state law fraud claims asserted in federal court. *See United States ex rel. Grant v. United Airlines, Inc.*, No. 2:15-cv-794, 2016 WL 6823321, at *6 (D.S.C. Nov. 18, 2016). Under this rule, parties alleging fraud "must state with particularity the circumstances constituting the fraud[.]" Fed. R. Civ. P. 9(b). To meet this standard, the complaint must describe "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Here, Defendant argues that Plaintiff fails to plead an affirmative misrepresentation with particularity. In response, Plaintiff argues that he has alleged the "who, what, when, where," with particularity, but that this court should also apply a relaxed version of the rule given that this is a case of fraudulent concealment. [ECF No. 16 at p.13.]

Many courts, including this District, have recognized the difficulty in applying Rule 9(b)'s particularity requirement to fraudulent concealment claims. *See, e.g., Naparala v. Pella Corp.*, 106 F. Supp. 3d 715, 725 (D.S.C. 2015) (finding "relaxed standard persuasive" in such cases).

---

[13] Plaintiff argues fraudulent concealment as a tolling doctrine and as a separate fraud claim.

And despite the fact that the Fourth Circuit has not yet adopted the "relaxed Rule 9(b) standard," at least one court in this District has found that such a standard "comports with the Fourth Circuit's instruction that '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Id.* (citing *Harrison*, 176 F.3d at 784). Given the nature of the claims asserted in this case, the undersigned is persuaded that the relaxed standard should apply here.

Plaintiff's complaint contains many detailed allegations regarding Defendant's conduct and knowledge related to the N63 engine's oil consumption post-2009. *See* Am. Compl. at ¶¶ 5, 46–63. The allegations related to Defendant's knowledge prior to 2009, in contrast, are more general. *See* Am. Compl. at ¶ 64 ("Plaintiff is informed and believes . . . that BMW acquired its knowledge of the oil consumption defect in 2008, if not before, through sources not available to Plaintiff[.]").[14] Even applying the relaxed Rule 9(b) standard, the question of whether Plaintiff's fraudulent concealment complies is a close one. But because Plaintiff's allegations, taken together, allege that the "defendant was aware of a product defect," *see id.* at ¶¶ 46–64, "how the defendant became aware of the defect," *id.* at ¶ 64, "that the defendant concealed the defect from the plaintiff[]," *id.* at ¶ 65, and "that the plaintiff[] would have taken different actions had [he] known about the defect," *id.* at ¶ 7, the court will follow the reasoning in *Naparala* and deny the motion to dismiss the fraudulent concealment and SCUTPA claims for failure to plead with particularity. 106 F. Supp. 3d at 725–26 (citing *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011)).

---

[14] As will be discussed in the section on the economic loss doctrine, *infra*, this distinction between pre-purchase concealment and post-purchase concealment is an important one for Plaintiff.

A finding that Plaintiff has pleaded the claims with the requisite particularity does not resolve Defendant's argument that Plaintiff failed to plead the required relationship to invoke a duty to disclose. Under South Carolina law, "[n]on-disclosure is fraudulent when there is a duty to speak." *Regions Bank v. Schmauch*, 582 S.E.2d 432, 445 (S.C. Ct. App. 2003). A duty to speak arises in three situations:

> (1) Where it arises from a preexisting definite fiduciary relationship between the parties; (2) where one party expressly reposes trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; and (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Id.* at 445–46 (citing *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967)). Defendant argues that Plaintiff fails to allege any of the three foregoing relationships. The court cannot agree.

While the relationship between a purchaser and a seller is not a fiduciary one, Plaintiff plausibly alleges that Defendant had a duty to speak under the second of the three above-listed scenarios described in *Regions Bank*. More specifically, Plaintiff alleges that Defendant was aware of the N63 engine's oil consumption defect before Plaintiff purchased the vehicle, concealed the defect while the warranties were in effect, and issued TSBs and a customer care program to conceal the severity of the defect and reduce customer complaints. If proven, these allegations could constitute "circumstances" or "nature of [] dealings" that give rise to a duty to speak. Further factual development through discovery may show that Plaintiff did know, or at least should have known, about the defect when he purchased his vehicle, but this fact is not conclusively established by the allegations in Plaintiff's pleading. Given the allegations in the pleading, this court must

deny the motion to dismiss the fraudulent concealment and SCUTPA claims for alleged lack of particularity in the pleading.

### III. Economic Loss Doctrine.

Defendant's final argument is that the economic loss doctrine operates to bar Plaintiff's fraudulent concealment and SCUTPA claims. [ECF No. 13-1 at pp.14–15.] In opposition, Plaintiff argues that the economic loss doctrine should not be applied to his SCUTPA cause of action as it is statutory, does not sound in common law tort, and the two claims are premised on an independent duty outside of the contract for sale of the vehicle. [ECF No. 16 at pp.16–17.]

South Carolina's economic loss doctrine "developed in product liability cases to assist in determining whether contract or tort theories were applicable to a given situation." *Bishop Logging Co. v. John Deere Indus. Equip. Co.*, 455 S.E.2d 183, 188 (S.C. Ct. App. 1995); *see also Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49 (S.C. 2009) (The purpose of South Carolina's economic loss doctrine "is to define the line between recovery in tort and recovery in contract."). It provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Id.* "Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract." *Id.* As the South Carolina Supreme Court has explained, "[c]ontract law seeks to protect the expectancy interests of the parties," while "[t]ort law . . . seeks to protect safety interests and is rooted in the concept of protecting society as a whole from physical harm to person or property." *Sapp*, 687 S.E.2d at 49.

In this case, Plaintiff unquestionably alleges only economic losses. The disconnect for the court, however, relates to the claims at issue—fraudulent concealment and violation of the SCUTPA. Courts quite often dismiss negligence and negligence misrepresentation claims in

16

similar contexts, applying the economic loss doctrine. But having reviewed the case law cited by the parties and having conducted its own independent review of South Carolina law,[15] the court is unable to find any settled statement regarding whether a fraudulent concealment claim, such as the one asserted here, should be dismissed under *South Carolina* law.[16] *See S.C. Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F. Supp. 1549, 1557 (D.S.C. 1993) (noting "it would be [a] more compelling reason to raise the bar of the economic loss rule if the cause of action concerned was for fraud with its concomitant element of an actual intent to deceive"); *see also Trevillvan v. APX Alarm Sec. Sys., Inc.*, No. 2:10-cv-1387, 2011 WL 11611, at *8 (D.S.C. Jan. 3, 2011) ("With respect to fraud, a party induced to enter a contract by fraud may elect to sue in contract or in tort." (citing *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 309 S.E.2d 763, 766 (S.C. Ct. App. 1983)); *Enhance-It, LLC v. American Access Techs., Inc.*, 413 F. Supp. 2d 626, 631 (D.S.C. 2006) (declining to dismiss fraud claim under the economic loss doctrine where "Plaintiff has alleged that Defendant violated a duty imposed by tort law, *i.e.*, the duty not to commit fraud."). Some case law from this District suggests that such a claim is not barred by the economic loss doctrine. *See In re MI Windows and Doors, Inc.*, No. 2:12-cv-1297, 2012 WL 5384922, at *3 n.2 (D.S.C. Nov. 1, 2012) ("Here, Lake of Summerville's claim [for fraudulent concealment] is not based on the mere failure to fulfill contractual obligations, but on the duty not to commit fraud by concealing information that should be disclosed. Therefore, at this stage, where the court must accept the allegations as true, the court finds that the economic loss doctrine does not bar [the] fraudulent concealment claim.").

---

[15] The court's review was not intended to be an exhaustive one. It will leave that job to the parties on subsequent motion, if one is filed.
[16] Plaintiff refers to cases interpreting and applying North Carolina's economic loss doctrine. [ECF No. 16 at p.15.]

As to the SCUTPA, the case law is even less settled. At least one court in this District has rejected the argument that a SCUTPA claim is not a tort. *See Advance Nursing Corp. v. S.C. Hosp. Ass'n*, No. 6:16-cv-160, 2016 WL 6157490, at *5–*6 (D.S.C. Oct. 24, 2016) ("Plaintiff is mistaken [in arguing that torts are creatures of common law and SCUTPA arises under statute], however, as the Court notes the South Carolina Supreme Court has treated claims for violation of the SCUTPA as torts." (citing *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 743 S.E.2d 808, 815 (S.C. 2013) (treating SCUTPA claim as tort for purposes of South Carolina Tort Claims Act))). In another case though, the South Carolina Supreme Court seemed to acknowledge distinctions between a statutory SCUTPA claim and common law torts: "[T]he conduct prohibited by the SCUTPA is not merely duplicative of that addressed by the law of torts, contracts, and warranties." *Reynolds v. Ryland Group, Inc.*, 531 S.E.2d 917, 921 (S.C. 2000). Accordingly, this court remains open to additional analysis of this issue, but it will not find the SCUTPA claim barred by the economic loss doctrine as a matter of law at this stage.

In sum, this court agrees with Defendant that at first glance Plaintiff has alleged nothing more than economic loss related to a contract, *i.e.*, the contract for the purchase of his vehicle with the N63 engine. Nonetheless, Plaintiff's claims are saved from dismissal because he relies on "the duty not to commit fraud by concealing information that should be disclosed." *In re MI Windows*, 2012 WL 5384922, at *3 n.2. Further development of the facts related to Defendant's knowledge pre-2009 may assist in the ultimate resolution of this issue. The court must deny Defendant's motion.

## CONCLUSION

For the foregoing reasons, Defendant BMW of North America, LLC's Motion to Dismiss the Amended Complaint, ECF No. 13, is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon_____
United States District Judge

February 5, 2021
Florence, South Carolina